**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2098-17T3
                A-2098-17T3

STATE OF NEW JERSEY,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

EMIL F. HANNA,

      Defendant-Respondent/
      Cross-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

EMAD E. NAGUIB,

      Defendant-Respondent/
      Cross-Appellant.

_____

Argued January 6, 2020 – Decided February 25, 2020

Before Judges Rothstadt, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 10-10-1603.

Brian Dennis Gillet, Special Deputy Attorney General/Acting Deputy First Assistant Prosecutor, argued the cause for appellant/cross-respondent (Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney; Brian Dennis Gillet, of counsel and on the brief).

Timothy John Dey argued the cause for respondents/cross-appellants.

PER CURIAM

The State appeals the sentences imposed after defendants Emil F. Hanna and Emad E. Naguib were both convicted by jury in a joint trial of second-degree official misconduct, N.J.S.A. 2C:30-2(b).[1] We consolidate these appeals, calendared back-to-back, for the purpose of a single opinion; as defendants

---

[1] These matters were previously before us on an excessive sentence oral argument calendar. We vacated defendants' sentences and remanded to the sentencing judge for imposition of the five-year mandatory period of parole ineligibility required by N.J.S.A. 2C:43-6.5(b); and denied defendants' cross-appeals challenging the imposed sentences as excessive. State v. Hanna, No. A-2098-17 and State v. Naguib, No. A-2100-17. Defendants appealed from those decisions. The Supreme Court granted certification and summarily remanded the matters to us "for placement on the plenary calendar, including briefing by the parties." State v. Hanna, 239 N.J. 420 (2019); State v. Naguib, 239 N.J. 384 (2019).

observed in their respective merits briefs, "for all intents and purposes [they] have identical cases." The State contends, in its sole argument:

> THE SENTENCING JUDGE FAILED TO IMPOSE THE MANDATORY PAROLE DISQUALIFIER REQUIRED BY N.J.S.A. 2C:43-6.5[(b)] AND FAILED TO APPLY THE PROPER STANDARD IN MAKING THAT DECISION.

Defendants each cross-appeal from the sentences imposed—five-year prison terms with two years of parole ineligibility—both arguing:

> POINT ONE
>
> DEFENDANTS' SENTENCE MUST BE UPHELD: APPELLATE COURT CANNOT SUBSTITUTE ITS JUDGMENT FOR THAT OF THE TRIAL COURT: TRIAL COURT'S FACTFINDING VIS A VIS DEFENDANTS' CHARACTER AND THE NEED TO DETER ARE SUBJECT TO GREAT DEFERENCE.
>
> POINT TWO
>
> THE CHARACTER OF DEFENDANTS HANNA AND NAGUIB WERE FACTUAL DETERMINATIONS OF THE TRIAL COURT AND SENTENCING COURT. THE AGGRAVATING-MITIGATING FACTORS DOVETAIL THEREIN AND DO NOT STAND IN A VACUUM.
>
> POINT THREE
>
> THE FINDING OF DEFENDANTS' CHARACTER CLEARLY OUTWEIGHED THE NEED TO DETER. LAW PROVIDES TRIAL JUDGES WITH UNQUESTIONABLE AUTHORITY TO FIND

A-2098-17T3

CHARACTER OUTWEIGHS MERE "GENERAL DETERRENCE."

We reverse and remand because the full, five-year mandatory period of incarceration under N.J.S.A. 2C:43-6.5(b) should have been imposed. Defendants' merits briefs advance arguments against the State's position. Neither defendant, however, advanced any argument challenging the sentences imposed. As such we deem their respective cross-appeal claims abandoned, see Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding any claim that has not been briefed is deemed abandoned on appeal), but we consider defendants' arguments opposing the State's claim.

We set forth the facts of this case in our previous decision reversing the trial judge's grant of defendants' motions for judgment of acquittal.[2] Hanna, slip op. at 15 (App. Div. Feb. 9, 2016). We note all parties' merits briefs extensively quote those facts that we discerned from the record. We will not repeat them here except as germane to the issues before us.

---

[2] Defendants made motions for judgment of acquittal after the State rested and after the defense rested, R. 3:18-1; the trial judge reserved on both motions. State v. Hanna, Nos. A-4618-12, A-4894-12 (App. Div. Feb. 9, 2016) (slip op. at 5-6). Defendants also moved for judgement of acquittal after the return of the verdict, R. 3:18-2. Id. at 6. Prior to sentencing, the trial judge granted defendants' motions for judgment of acquittal which, although not specified in the trial judge's order, we considered made under Rule 3:18-2. Ibid.

A-2098-17T3

Defendants worked for the New Brunswick Parking Authority (NBPA),

> a municipal agency offering parking within the city of New Brunswick. The NBPA is supervised by the New Jersey Department of Community Affairs. Emil Hanna, a security sergeant and Emad Naguib, a security guard, were both employees of the NBPA. Both defendants patrolled numerous parking decks and garages under the NBPA's control, assisted cashiers at entrances and exits, assisted patrons with payment, and oversaw security and safety operations for patrons and their property.
>
> [Id. at 2.]

One of the methods parking-deck patrons could utilize when exiting was the "pay-in-lane" method whereby a ticket—obtained from a "ticket spitter" when entering the deck—would be fed into a self-pay machine, and the patrons would be required to pay with cash or credit card. Id. at 2-3. A summary of the transaction would be printed on the ticket that was retained in the machine. Id. at 3. If payment was bypassed for any reason, the ticket would be stamped "void," ibid., and the exit gate would have to be raised by using a swipe card, id. at 3-4.

An investigation prompted by reports of malfunctioning pay-in-lane machines revealed machines that were "filled with tickets marked 'void.'" Id. at 4. Further investigation disclosed

that certain employees, including defendants, were involved in a scheme to defraud the NBPA. The scheme operated as follows: after regular hours, when booth attendants were not present, patrons entered the garages and took a ticket from the "ticket spitter." When patrons sought to leave the parking garage, the security guards would assist at the exits. If the deck patrons made a cash payment, the security guards would take the cash, insert the patron's ticket into the pay-in-lane machine, and use their employee badge to raise the parking deck gate to allow the patron to leave. The tickets were then inserted into pay machines as "void." Those participating in the scheme would keep the money that the patrons assumed they were paying to the NBPA.

[Id. at 4-5.]

During defendants' trial, other NBPA security guards testified about their involvement in the scheme and that of both defendants. Id. at 5. The jury acquitted defendants of all charges except second-degree official misconduct, as charged in count two, "for not reporting the thefts committed by other employees."[3] Id. at 6.

---

[3] Defendants were both charged under Indictment No. 10-10-1603 with second-degree official misconduct – official function – benefit, N.J.S.A. 2C:30-2(a) (count one); second-degree official misconduct – non-perform duties, N.J.S.A. 2C:30-2(b) (count two); third-degree theft by unlawful taking, N.J.S.A. 2C:20-3 (count three); third-degree failure to make lawful disposition, N.J.S.A. 2C:20-9 (count four); second-degree computer crime – access purpose defraud/steal, N.J.S.A. 2C:20-25(c) (count five); second-degree conspiracy – computer crime, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:20-25 (count six); third-degree misapplication

A-2098-17T3

By the time we reversed the trial judge's grant of the motions for judgment of acquittal and remanded the matter for sentencing, and the Supreme Court denied defendants' petitions for certification,[4] the trial judge had retired and a different judge (the sentencing judge) sentenced defendants "in the [third-] degree range to the custody of the Commissioner of the Department of Corrections for a term of five . . . years with a two . . . year period of parole ineligibility." Defendants were ordered to "forfeit public employment" and were "barred from holding public employment in the future" pursuant to N.J.S.A. 2C:51-2 to -5.

Our review of the judge's sentencing decision is narrow, governed by an abuse of discretion standard. See State v. Blackmon, 202 N.J. 283, 297 (2010). We will affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the
> aggravating and mitigating factors found by the

---

of entrusted property, N.J.S.A. 2C:21-15 (count seven); two counts of second-degree bribery, N.J.S.A. 2C:27-2(c) and N.J.S.A. 2C:27-2(d) (counts eight and nine); second-degree offer/confer of unlawful benefit to public servant, N.J.S.A. 2C:27-11(a) (count eleven); second-degree pattern of official misconduct, N.J.S.A. 2C:30-7(a) and N.J.S.A. 2C:30-2(a) (count twelve); and third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(a) (count thirteen). Hanna was additionally charged with second-degree leader of organized crime, N.J.S.A. 2C:5-2(g) (count fourteen) and second-degree theft by extortion, N.J.S.A. 2C:20-5 (count fifteen).

[4] State v. Hanna, 228 N.J. 268 (2016); State v. Naguib, 228 N.J. 253 (2016).

sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

We will likewise affirm if the sentencing judge balances the appropriate and applicable aggravating and mitigating factors, and such factors are supported by sufficient credible evidence in the record. See State v. Carey, 168 N.J. 413, 430 (2001); State v. Megargel, 143 N.J. 484, 493-94 (1996). We do not second-guess such assessments so long as they are based on the appropriate guidelines. Roth, 95 N.J. at 365. We review the imposed sentences under those standards.

## I.

At the sentencing hearing, the judge largely rejected the State's assertion that aggravating factors one, two, three, four, nine, ten and eleven, N.J.S.A. 2C:44-1(a)(1), (2), (3), (4), (9), (10) and (11), applied to both defendants, and that aggravating factor six, N.J.S.A. 2C:44-1(a)(6), applied to Naguib. The judge found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (the need to deter defendants "and others from violating the law"), and added that aggravating factor eleven, N.J.S.A. 2C:44-1(a)(11) ("[t]he imposition of a fine, penalty or

order of restitution, without also imposing a term of imprisonment would be perceived . . . as part of the cost of doing business," or expense related to "the initial decision to resort to unlawful practices"), "may apply," although the judge stated he would not "give it any kind of substantial weight." The sentencing judge found mitigating factors two, seven, eight and nine, N.J.S.A. 2C:44-1(b)(2), (7), (8) and (9), "[a]nd the mitigating factors clear and convincing evidence substantially exceed the mitigating factors in this case (sic), but the [c]ourt will grant the application to be sentenced one degree lower pursuant to [N.J.S.A.] 2C:43-6.5(c)(2)."[5]

In an amplification issued after the State appealed, R. 2:5-1(b), the sentencing judge reviewed each proposed sentencing factor and concluded "mitigating factors [one, two, seven, eight and nine were] applicable in this case," and only aggravating factor nine applied. The judge reversed his prior finding of aggravating factor eleven "because it is the court's intention to impose

---

[5] N.J.S.A. 2C:44-1(f)(2), provides:

> In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted.

a term of imprisonment with a period of parole ineligibility," so he found that aggravating factor inapplicable. Despite that determination, and the judge's finding that application of aggravating factor four "raise[d] the specter of double-counting," the judge added, "[t]he court will give very slight weight to aggravating factors [four] and [eleven]." He then, inexplicably concluded "aggravating factor [nine] is the only aggravating factor in this case." (Emphasis added).

The State argues the sentencing judge erred in failing to find aggravating factors four and ten. N.J.S.A. 2C:44-1(a)(4) requires a sentencing judge to consider whether "[a] lesser sentence will depreciate the seriousness of the defendant's offense because it involved a breach of the public trust under chapters 27 and 30, or the defendant took advantage of a position of trust or confidence to commit the offense." The judge must also consider whether "[t]he offense involved fraudulent or deceptive practices committed against any department or division of State government," under N.J.S.A. 2C:44-1(a)(10).

The sentencing judge explained that application of aggravating factor four raised the prohibited practice of double-counting because the underlying conviction for official misconduct "inherently involves a breach of trust. Moreover, the court's sentence in this matter involving as it does a significant

10

period of parole ineligibility does not 'depreciate' the seriousness of the offense. Imprisonment, particularly with a period of parole ineligibility, is a significant, impactful and life[-]altering experience."

Similarly, the judge found application of aggravating factor ten "would constitute 'double[-]counting'" because the crime of official misconduct "involves action taken against a government entity." The judge also found that factor inapplicable because the NBPA was "an arm of [the] City of New Brunswick, a local entity," and not "a division or department of State government."

We do not agree with the sentencing judge's conclusion that consideration of aggravating factor four would constitute double-counting. Prohibited "double-counting" occurs when a sentencing judge considers one of the required elements of the offense charged as an aggravating factor. See State v. Yarbough, 100 N.J. 627, 633 (1985) (finding facts incorporated by the Legislature into a criminal statute "as part of the original grading of the offense" are not to be weighed as aggravating and mitigating factors). As our Supreme Court observed in State v. Kromphold, 162 N.J. 345, 353 (2000):

> In [Yarbough, 100 N.J. at 633], we recognized that facts that established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that

11

sentence. We reasoned that the Legislature had already considered the elements of an offense in the gradation of a crime. Ibid. If we held otherwise, every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and aggravating circumstances. In the same manner, double-counting of elements of the offenses as aggravating factors would be likely to interfere with the Code's dedication to uniformity in sentencing.

We recognized the

> three elements required to establish a violation of N.J.S.A. 2C:30-2[(b)] are that "(1) the defendant was a public servant; (2) the defendant knowingly refrained from performing a duty which is imposed upon him or her by law or which is clearly inherent in the nature of the office; and (3) the defendant's purpose in so refraining was to benefit himself or herself or to injure or deprive another of a benefit."
>
> [State v. Kueny, 411 N.J. Super. 392, 404 (App. Div. 2010) (quoting State v. Thompson, 402 N.J. Super. 177, 195-96 (App. Div. 2008)).]

Aggravating factor four requires a sentencing judge to balance the gravity of conduct involving a breach of the public trust in every chapter 30 conviction against the length of a reduced sentence. It does not directly implicate the three elements of official misconduct so as to constitute double-counting. Rather, the task is akin to considering whether injuries sustained by a victim of a violent crime exceed those required to establish an element of the crime. See, e.g., State

v. Mara, 253 N.J. Super. 204, 214 (App. Div. 1992) ("The extent of the injuries, which exceed the statutory minimum for the offense, may be considered as aggravating.").

We cannot, however, conclude the judge abused his discretion in balancing defendant's conduct against the sentence and finding aggravating factor four inapplicable. The judge considered the length of the five-year sentence and the period of parole ineligibility in assessing whether a lesser sentence would "'depreciate' the seriousness" of each defendant's offense because it involved official misconduct, a chapter 30 offense. To that end, the judge considered the role each defendant played in the scheme, noting—in his mitigating-factor findings—defendants were found not guilty of theft and were found guilty of official misconduct because of their failure to report thefts by their coworkers.

As noted, the sentencing judge also found application of aggravating factor ten "would constitute 'double[-]counting'" because the crime of official misconduct "involves action taken against a government entity." The judge also found that factor inapplicable because the NBPA was "an arm of [the] City of New Brunswick, a local entity," and not "a division or department of State government."

The assistant prosecutor, when asked by the judge at the sentencing hearing how the application of factor ten was "not double-counting," replied, "I think -- it might be double[-]counting, [j]udge, but I think it's an aggravating factor that I think is present." The colloquy continued:

> THE COURT: Well, if it's double[-]counting, I can't take it under consideration.
>
> [ASSISTANT PROSECUTOR]: Well, I mean, the weight you give it is of course up to Your Honor.
>
> THE COURT: Well, no. It --
>
> [ASSISTANT PROSECUTOR]: But it is a factor.
>
> THE COURT: The Appellate Division has said if it's inherent in the actual charge -- official misconduct means you've messed around in your government position -- then number [ten] can't apply because it's double[-]counting because it involves messing up against the government.
>
> [ASSISTANT PROSECUTOR]: I'll give you that.

The State's concession during sentencing effectively forecloses its contrary argument on appeal. Ji v. Palmer, 333 N.J. Super. 451, 459 (App. Div. 2000).

Nonetheless, because we agree with the judge's conclusion that factor ten is inapplicable because the illegal activity was not committed against a State department or division, we need not determine whether its application constituted double-counting. Although the NBPA is supervised by the New

A-2098-17T3

Jersey Department of Community Affairs, as we recognized in our prior decision in this matter, it is a municipal agency. Hanna, slip op. at 2 (App. Div. Feb. 9, 2016).

We thus find no error in the sentencing judge's finding that aggravating factors four and ten were inapplicable.

## II.

The State also contends the sentencing judge erred in reducing the period of parole ineligibility to two years instead of adhering to N.J.S.A. 2C:43-6.5(a) that provides, in relevant part:

> [A] person who serves or has served as a public officer or employee under the government of this State, or any political subdivision thereof, who is convicted of a crime that involves or touches such office or employment . . . shall be sentenced to a mandatory minimum term of imprisonment without eligibility for parole as follows . . . for a crime of the second degree, five years[.]
>
> [(Emphasis added).]

That mandatory minimum term may be waived or reduced "[i]f the court finds by clear and convincing evidence that extraordinary circumstances exist such that imposition of a mandatory minimum term would be a serious injustice which overrides the need to deter such conduct in others[.]" N.J.S.A. 2C:43-

6.5(c)(2).  If the mandatory minimum is reduced or waived, the sentencing judge "must state with specificity its reasons" for so doing.  N.J.S.A. 2C:43-6.5(c)(2).

Although "[t]he decision to waive or reduce the mandatory minimum may be made even in the absence of a downgrade" under N.J.S.A. 2C:44-1(f)(2), State v. Rice, 425 N.J. Super. 375, 389 (App. Div. 2012), "N.J.S.A. 2C:43-6.5(c)(2) imposes a 'higher standard' on the judge when deciding to reduce a period of parole ineligibility than when deciding to downgrade an offense," id. at 388.  That "higher standard" allows a reduction or waiver

> only in "the extraordinary or extremely unusual case where the human cost of imprisoning a defendant [for the statutory mandatory minimum and] for the sake of deterrence constitutes a serious injustice."  See [State v. Evers, 175 N.J. 355, 392 (2003)].  The judge may consider the circumstance of the case and the defendant's role in the commission of the crime.  See id. at 394.  But, the critical focus, as with N.J.S.A. 2C:44-1(d), is whether the "extraordinary circumstances" presented by an individual defendant outweigh the legislative determination that the need to deter others from committing certain crimes "involv[ing] or touch[ing] . . . [public] office or employment" requires imposition of the statutory mandatory minimum. N.J.S.A. 2C:43-6.5(a) and (c)(2).
>
> [Rice, 425 N.J. Super. at 389 (first, third, fourth and fifth alterations in original).]

The "guideposts" for deciding these "extraordinary or extremely unusual" cases were announced by the Court in Evers:

In deciding whether the "character and condition" of a defendant meets the "serious injustice" standard, a trial court should determine whether there is clear and convincing evidence that there are relevant mitigating factors present to an <u>extraordinary</u> degree and, if so, whether cumulatively, they so greatly exceed any aggravating factors that imprisonment would constitute a serious injustice overriding the need for deterrence. We do not suggest that every mitigating factor will bear the same relevance and weight in assessing the character and condition of the defendant; it is the quality of the factor or factors and their uniqueness in the particular setting that matters.

[175 N.J. at 393-94.]

Additionally, the Court instructed that the quality of the cumulative "extraordinary mitigating factors . . . must be weighed in deciding whether the 'serious injustice' standard has been met." <u>Id.</u> at 395. So too, the sentencing judge "must look at the gravity of the offense with respect to the peculiar facts of a case to determine how paramount deterrence will be in the equation." <u>Ibid.</u>

The sentencing judge found extraordinary circumstances warranted a reduction in the mandatory minimum term: both defendants "were found not guilty of engaging in any affirmative wrongdoing" including theft; their conviction "was premised on their failure . . . to disclose" other employees' wrongdoing; "[n]o serious harm actually occurred or [could] be attributed to . . . defendants"; they received "[n]o personal benefit"; only aggravating factor

nine applied; they had "no substantial criminal record"; and their recidivism risk was "de minimis." The judge thus concluded clear and convincing evidence proved "the character and condition of defendants are so idiosyncratic and present extraordinary circumstances of the type that justifies the application of N.J.S.A. 2C:4[3]-6.5(c)(2)."

The judge's conclusion misapprehended the "serious injustice" standard. As the Evers Court observed, the "serious injustice" standard is extremely narrow and not readily overcome. Id. at 391-92. The Evers Court recognized that only one case, to that point, satisfied the high standard: State v. Jarbath.[6] Id. at 389. The rarity of the cases that meet the standard was illustrated by the idiosyncratic nature of the defendant in Jarbath—described by the Court as a "twenty-one year old woman who has also been diagnosed as psychotic," with an intellectual disability, who pleaded guilty to second-degree manslaughter after killing her nineteen-day-old son—and her circumstances:

> Defendant's deficient mental and emotional condition were relevant not only to her culpability but also to her capacity to assimilate punishment. Both courts found that the crime was unintentional. There was little evidence to suggest that defendant could comprehend that she had committed a crime that deserved a prison term, or that she could modify her behavior based on her imprisonment. In addition, defendant did not have

---

[6] 114 N.J. 394 (1989).

the understanding or emotional strength of relatively normal persons. She apparently could not endure life in prison without unusual suffering, that is, hardship and privation greatly exceeding that which would be accepted and endured by ordinary inmates as the inevitable consequences of punishment. In sum, as determined by the Appellate Division, the "serious injustice" of imprisonment under these circumstances clearly outweighs the needs of general deterrence.

[114 N.J. at 398, 408-09.]

Since Jarbath, few cases have met the standard. See State v. E.R., 273 N.J. Super. 262, 273-74 (App. Div. 1994) (finding "serious injustice" where the defendant was bedridden with AIDS and incarceration would not serve a purpose). But see State v. Jabbour, 118 N.J. 1, 4, 8-9 (1990) (finding that the "serious injustice" standard was not met where the defendant was characterized "as a sad, sorry, weak individual in need of psychiatric attention").

The "extraordinary circumstances" found by the sentencing judge do not support the reduced mandatory minimum term. As the Evers Court held, a

defendant's status as a first-time offender, "family man," "breadwinner," and esteemed member of the community, however commendable and worthy of consideration in deciding the length of his term of incarceration, is not so extraordinary as to alter the conclusion that his imprisonment would not constitute a serious injustice overriding the need for deterrence.

[175 N.J. at 400.]

19

Thus, the factors found by the sentencing judge, related to the crime and defendants' character, evidenced by the numerous letters lauding defendants as respected members of the community, are not so extraordinary as to warrant a departure from the presumption of mandatory minimum. Defendants have not met the heavy burden necessary to satisfy the "serious injustice standard." See id. at 394-95.

We conclude with our observation that the sentencing judge's finding that "[t]he [o]fficial [m]isconduct statute applies to this case because the City of New Brunswick assumed a function that is not traditionally thought of as a government function—providing parking spaces" and that "[t]raditional government functions were not implicated in this case" had no role in determining whether the mandatory minimum term should have been waived. The jury found the State proved the elements of the crime of official misconduct, including that defendants were public servants who knowingly refrained from reporting thefts from a public authority. Judges do not decide the functions in which a government may engage. If a public servant "knowingly refrain[s] from performing a duty which is imposed upon him or her by law or which is clearly inherent in the nature of the office," and that governmental function is deprived of a benefit, such as parking fees, Kueny, 411 N.J. Super. at 404, judges must

acknowledge such conduct constitutes official misconduct, particularly when that finding is made by a jury.

We also look askance at the sentencing judge's finding that "but for the timing of the trial judge's decision to effectively acquit them, [defendants] would be facing absolutely no penal consequences." The judge's comment disregards the true facts of the case—the motion granted by the trial judge was made after the return of the verdict and was appealable by the State, R. 2:3-1(b)(3), and deprecates our reversal of the trial judge's grant of that motion. The motion, or the timing of the motion, should not have been considered in determining the mandatory-minimum reduction.

We, therefore, remand these matters for the imposition of the five-year period of parole ineligibility required by N.J.S.A. 2C:43-6.5(b). We note the judgments of conviction were not amended after the sentencing judge issued the amplification in which he clarified defendants' sentences were not downgraded for purposes of sentencing. The judgments erroneously provide the sentences imposed were "in the [third-]degree range[.]" That error should be corrected when new judgments are prepared.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21                                                          A-2098-17T3